UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

LIANNA M. D.,

                Plaintiff,

   -against-                                                8:20-CV-0615 (LEK)

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                Defendant.

---

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      This Social Security appeal is before the Court pursuant to Plaintiff's complaint filed June 3, 2020. <u>See</u> Dkt. No. 1 ("Complaint"). Plaintiff seeks review of the determination made by the Commissioner of Social Security that Plaintiff is not disabled and is therefore ineligible for Supplemental Security Income and Social Security Disability Insurance. <u>See</u> <u>id.</u> at 1; <u>see also</u> Dkt. No. 14 ("Plaintiff's Brief") at 2; Dkt. No. 11 ("Record"). The Commissioner of the Social Security Administration ("Commissioner" or "Defendant") has responded. <u>See</u> Dkt. No. 19 ("Defendant's Brief"). For the reasons that follow, the Commissioner's determination of no disability is remanded for further proceedings consistent with this Memorandum-Decision and Order.

**II.    BACKGROUND**

    **A.  Disability Allegations and Plaintiff's Testimony**

      Plaintiff is a 41-year-old woman and was 39 years old at the time of her hearing in front of the administrative law judge ("ALJ") on January 30, 2019. Pl.'s Br. at 2. Plaintiff alleges a

disability onset date of August 29, 2016 and has not had substantial gainful employment since that date. R. at 2. Plaintiff initially filed for disability on February 3, 2017. R. at 57.

      Plaintiff's medical records detail several issues with her left foot. These include a fracture she suffered after a fall in 2013; R. at 370; suspected osteonecrosis potentially suffered in 2013; R. at 407, 432; a growth that formed in 2016, possibly due to Plaintiff stepping on a nail, that resulted in swelling and pain even after the growth was removed; R. at 287, 370, 904, 1689; an abscess that occurred after the growth removal and that required surgery in 2016; R. at 295; and an infected plantar tumor that was also removed in 2016; R. at 1229. Plaintiff also has documented issues with her right foot, including observed pain in the arch and ankle. R. at 1981; Pl.'s Br. at 6.

      Plaintiff's records contain claims by Plaintiff that both kneecaps frequently dislocate out of place. R. at 370, 1674. Plaintiff has been diagnosed with bilateral knee pain and dislocations. R. at 331. Plaintiff uses a cane, which at least one doctor found to be medically necessary. R. at 328.

      The medical records likewise describe issues with Plaintiff's right shoulder and right arm. These include a claimed history of carpal tunnel syndrome, R. at 1926, as well as observed pain, numbness, and diminished grip strength resulting from an injury incurred when Plaintiff lifted up on a piano in July 2017. R. at 1870–1873, 1974. As a result of the incident with the piano, Plaintiff was diagnosed with right shoulder impingement in March of 2018. R. at 1934.

      Plaintiff was also diagnosed with PTSD, depressive disorder, and anxiety disorder. R. at 337.

      At the hearing before the ALJ on January 30, 2019, Plaintiff testified that she had received a two-year associates degree and lived with her boyfriend and two children ages 10 and

6. R. at 32. Plaintiff described working in food prep for a casino part-time, about 15 to 20 hours a week, as well as working at a former summer-time job in a greenhouse. R. at 33. Plaintiff stated that while working at the casino she was allowed to take breaks and leave early as needed and would frequently miss work due to her health issues. R. at 40–41, 47.

Plaintiff testified regarding issues with her left foot, including the plantar wart which she had removed multiple times. R. at 34. She described a painful fracture in the arch of her right foot. R. at 34–35. She claimed her knees dislocate very often, causing great pain. R. at 35. Plaintiff spoke of "occasionally" using a cane, a couple times a week, and using her mother's walker on bad days, about once or twice a week. R. at 38–39, 42.

Plaintiff estimated she could walk for about an hour and a half before needing to rest, stand for about an hour, and sit for an hour and a half to two hours before having to stand. R. at 39.

Plaintiff claimed she has problems lifting and grasping with her left arm due to a torn tendon as well as right arm pain and carpal tunnel symptoms in her right hand. R. at 46. She testified she has a hard time grabbing things and drops things frequently. Id. Plaintiff stated she could lift 10 to 15 pounds. R. at 40.

Finally, Plaintiff described her mental and emotional issues, including breaking down on a daily basis due to her depression, R. at 35, as well as anxiety and PTSD, which cause her mind to occasionally "shut down," R. at 43. Plaintiff claimed she had panic attacks "at least a couple times a month," and only slept one hour per night due to her anxiety. R. at 44–45.

### B. The ALJ Decision

#### 1. ALJ's Analysis of Plaintiff's Testimony

The ALJ issued his decision on March 13, 2019. R. at 21. Addressing Plaintiff's testimony, the ALJ found that "claimant's medically determinable impairments could reasonably

be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. at 16.

The ALJ noted that while Plaintiff alleged her left foot pain contributed to her inability to work, examinations of her feet showed only moderate tenderness in her left foot and no issues with her right foot, with a normal gait, and normal stability, range of motion, and strength in both feet. Id. Further, the ALJ continued, imaging of Plaintiff's left foot only noted minor abnormalities and treatment for her feet had been conservative with only physical therapy and medication being prescribed. Id. However, the ALJ did take into account the fact that Plaintiff limped and regularly used a cane, exhibited difficulty rising from a chair or exam table, exhibited tenderness on the bottom of her left foot, and had recurring plantar warts on her left foot. R. at 17.

Regarding Plaintiff's right shoulder, the ALJ asserted that examinations had generally shown only mild deficits and mild tenderness with normal strength and some limited range of motion. Id. Imaging of Plaintiff's right elbow and shoulder showed no abnormalities. Id. The ALJ further noted that Plaintiff's treatment had been conservative, and she had responded well to physical therapy and medication with noted progress in her strength. Id.

The ALJ found that Plaintiff's psychiatric assessments had noted deficits only in her mood and affect, and Plaintiff had "reported no symptoms of depression or anxiety on multiple occasions." Id. Finally, the ALJ remarked that while Plaintiff claimed her daily activities had been affected by her impairments, Plaintiff was able to cook and clean, do laundry every day, shop, bathe and dress herself, and watch television, listen to the radio, and read. Id. She was also able to work part time at a casino and green house. Id.

*2. ALJ's Analysis of Medical and Opinion Evidence*

The ALJ lent great weight to the opinion of Dr. Elke Lorensen, M.D., in which she opined that Plaintiff's cane was medically necessary and Plaintiff had limitations in ambulating and squatting. R. at 18. The ALJ found that Lorensen's opinion was consistent with Plaintiff's claims, the symptoms identified in other examinations, and Lorensen's own examination of Plaintiff. Id.

The ALJ gave only partial weight to the opinion of Dennis Noia, Ph.D. Id. Noia examined Plaintiff, noted deficits in her mood and affect, but found she had only minimal psychiatric limitations. Id. The ALJ granted only partial weight because such deficits in mood and affect would cause greater psychiatric limitations than Noia asserted, in that they could affect Plaintiff's "ability to interact with others, concentrate, and understand or remember instructions[.]" Id. Thus, while Noia's findings themselves were consistent with the record, his proposed psychiatric limitations did not adequately address the consequences of those findings in regard to Plaintiff's psychiatric functioning. Id.

The ALJ gave only partial weight to the opinion of Laura Rizzo, N.P. Id. Nurse Rizzo asserted that Plaintiff's pain and numbness would require her to be off task for one quarter or more of every workday and to miss four or more days of work per month. Id.; R. at 1983. The ALJ found that this opinion was contradicted by the medical evidence on the record, namely that there was no evidence Plaintiff's pain was so severe that she would need to be off-task or miss work to that extent, and Plaintiff's physical examinations had only found "slight issues of pain in her right shoulder and left foot." R. at 18. The ALJ found Rizzo's opinion further contradicted by the fact that Plaintiff had shown and reported improvement through physical therapy. R. at 18–19.

The ALJ gave only partial weight to the State Agency opinion of M. Marks, Ph.D. who found only mild limitations to Plaintiff's ability to understand, concentrate, and interact socially and moderate limitation to Plaintiff's ability to adapt. R. at 19. The ALJ found this was contradicted by the record, which showed Plaintiff's deficits were in her mood and affect and Plaintiff's daily living activities had not been significantly affected. Id. The ALJ found these psychiatric issues would indeed reasonably affect Plaintiff's ability to interact, concentrate, and understand tasks. Id.

Finally, the ALJ gave only partial weight to the State Agency opinion of Dr. A. Vinluan, M.D. Id. Dr. Vinluan found that Plaintiff "was limited to the sedentary exertional level, with additional postural limitations." Id. The ALJ reduced the weight given this opinion because, while the described limitations were consistent with Plaintiff's foot related impairments, they did not account for evidence developed after the opinion was rendered concerning Plaintiff's right shoulder impingement and obesity. Id.

### 3. The ALJ's Disability Analysis

The ALJ ultimately found Plaintiff was not disabled and denied her application for disability insurance benefits and supplemental security income. R. at 21. In making this determination, the ALJ analyzed Plaintiff's testimony, the underlying medical record, and the opinions of medical experts as described above. See R. at 10–21.

The ALJ found that Plaintiff met the Social Security Act's insured status requirements and had not engaged in substantial gainful activity since August 29, 2016, the alleged onset date. R. at 12. The ALJ found Plaintiff had the following severe impairments: plantar warts, right shoulder impingement, obesity, hallux valgus, anxiety, depression, and post-traumatic stress disorder. Id. The ALJ further found that alleged issues with Plaintiff's feet and knees were not medically determinable impairments. R. at 13. Next, the ALJ held Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. Id. Given Plaintiff's impairments and symptoms, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant should never climb stairs, ramps, ropes, ladders and scaffolds. The claimant can occasionally balance and stoop, but never kneel, crouch, and crawl. The claimant should be allowed to use a cane to assist with ambulation. The claimant should not push or pull with her lower extremities. The claimant can reach overhead and handle frequently, but not constantly. The claimant should avoid concentrated exposure to extreme cold, wetness, unprotected heights, excessive vibrations, and hazardous machinery. The claimant is limited to unskilled, non-detailed, routine, and repetitive tasks. The claimant can adapt to simple and routine work-changes and make simple work-related decisions. The claimant's job should not require more than occasional interaction with the public and coworkers.

R. at 15. The ALJ determined Plaintiff had no past relevant work to consider. R. at 19.

Finally, the ALJ found that there were jobs in significant numbers in the national economy that claimant could perform given her RFC, age, education, and work experience and thus Plaintiff was not disabled. R. at 20.

### C. Procedural History

Plaintiff filed her initial application for supplemental security income and social security disability insurance on February 3, 2017. R. at 57, 71. The social security administration denied her claim on May 3, 2017. R. at 85. Thereafter, Plaintiff requested a hearing before an ALJ, which was held January 30, 2019. R. at 10, 93.

On March 13, 2019 the ALJ issued the above-described opinion, denying Plaintiff's claim for benefits. R. at 11–21. In or around August 2019, Plaintiff requested review by the Appeals Council, which was denied on April 3, 2020. R. at 1–6.

On June 3, 2020, Plaintiff initiated the present matter. See Comp. Plaintiff makes five main arguments: (1) the ALJ erred in his determination of medical impairments; (2) the ALJ

erred in his analysis of Nurse Rizzo's opinion; (3) the ALJ erred in finding that the medical evidence contradicted Plaintiff's testimony at the hearing; (4) the ALJ's RFC determination was not supported by substantial evidence, and (5) the ALJ's determination that Plaintiff could perform jobs in the national economy was likewise not supported by substantial evidence.

### III. LEGAL STANDARD

#### A. Standard of Review

When a district court reviews an ALJ's decision denying a claim for social security benefits, it must determine whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence in the record. 42 U.S.C. § 405(g); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). Substantial evidence is "more than a mere scintilla," and must reasonably support the decision maker's conclusion. Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence has alternatively been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). This "very deferential standard of review," Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012), requires a court to defer to an ALJ's decision if supported by substantial evidence, "even if [the court] might justifiably have reached a different result upon a de novo review." Sixberry v. Colvin, No. 12-CV-1231, 2013 WL 5310209, at *3 (N.D.N.Y. Sept. 20, 2013) (quoting Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)).

#### B. Standard for Award of Benefits

A "disability" sufficient to merit an award of benefits under the Social Security Act is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

8

has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). However, an individual seeking disability benefits "need not be completely helpless or unable to function." De Leon v. Sec'y of Health and Human Servs., 734 F.2d 930, 935 (2d Cir. 1984).

An ALJ undergoes a five-step evaluation process to determine whether a claimant is disabled and eligible for disability benefits. 20 C.F.R. § 404.1520(a)(1). If the ALJ determines at any step that the claimant is disabled or not disabled, the evaluation ends. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful work activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. Id. At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe," i.e., that "significantly limits" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(c). If the claimant does not have such an impairment, the claimant is not disabled. Id. At step three, the ALJ asks whether the claimant's medically determinable impairment(s) are as severe as an impairment listed in Appendix 1 of Subpart P of § 404. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R., Pt. 404, Subpt. P, App. 1. If so, the claimant is disabled. Id. At step four, the ALJ determines claimant's RFC and determines whether claimant can perform work they performed in the past, if they can, they are not disabled. § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, or if the claimant does not have any relevant past work, the ALJ decides at step five whether, given the claimant's RFC, age, education, and work experience, they are capable of adjusting and performing "other work" that exists in

9

significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant "cannot make an adjustment to other work," then the claimant is disabled. Id.

In the first four steps, the claimant bears the burden of proof. At step five, the burden shifts to the Commissioner. Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

## IV. DISCUSSION

### A. The ALJ Did not Err in Determining Plaintiff's Medically Determinable Impairments

Under the Social Security Act, a medical issue will be considered a medically determinable impairment if it is an "anatomical, physiological, or psychological abnormalit[y]" that can be "established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. The existence of an impairment cannot be established by a claimant's "statement of symptoms, a diagnosis, or a medical opinion," id. A list of acceptable medical sources is set forth in Sections 404.1502 and 416.902. See 20 C.F.R. §§ 404.1502(a), 416.902(a).

Here, the ALJ determined that Plaintiff had the following severe, medically determinable impairments: plantar warts, right shoulder impingement, obesity, hallux valgus, anxiety, depression, and post-traumatic stress disorder. R. at 12.

Plaintiff argues that the ALJ erred in deciding Plaintiff's left foot fracture, left foot osteonecrosis, and bilateral knee disorders were not medically determinable impairments, and argues that such determination is not supported by substantial evidence. Pl.'s Br. at 12–13. To support her argument, Plaintiff points to several sections of the record that she claims establish these physiological issues as medically determinable impairments.

Regarding the left foot fracture and osteonecrosis, Plaintiff refers to imaging done on Plaintiff's left foot in 2013 that "revealed suspected fracture fragments," R. at 377, the fact Plaintiff wore a fracture boot on her left foot in 2013, R. at 393, had observed swelling and suspected osteonecrosis in 2013, id., and required use of a cane for left foot pain prior to her abscess being drained in 2016, R. at 1209; see Pl.'s Br. at 12–13.

Regarding Plaintiff's bilateral knee disorders, Plaintiff points to the opinion given by Dr. Lorensen in which she diagnosed Plaintiff with bilateral knee pain and dislocations, R. at 331, the assessment made by Richard Finch, P.A. in 2009 that Plaintiff had left knee derangement of the medial meniscus and right knee pain, R. at 627, Plaintiff's claims that her kneecap gave out leading to her fall in 2013, R. at 370, 436, and the statement by Marie Haggarty, P.A. in 2013 that Plaintiff "may need surgery" on her knee, R. at 717; see Pl.'s Br. at 13. Plaintiff also asserts that her knee issues should have been considered an impairment due to the observation made by Kelly MacKinnon, P.T., in 2017 that knee pain was causing Plaintiff to have difficulty with the physical therapy prescribed for her ankle, R. at 1630, and the fact Plaintiff described her knee dislocations during the hearing, R. at 35, see Pl.'s Br. at 13.

In response, the Commissioner argues that the evidence pointed to by Plaintiff is insufficient because much comes from practitioners who are not acceptable medical sources as defined by Section 404.1502(a), others are mere statements of symptoms made by Plaintiff, and the rest of the evidence cited by Plaintiff is contradicted by other evidence on the record which created a conflict the ALJ was entitled to resolve. Def.'s Br. at 6–8.

The Court agrees with the Commissioner.

Regarding Plaintiff's left foot fracture and osteonecrosis, the cane[1] and fracture boot pointed to as evidence of the fracture by Plaintiff were prescribed by Marie Haggarty, P.A. R. at 371, 1209. As a physician's assistant, Ms. Haggarty is not an acceptable medical source listed in Section 404.1502 or 416.902, therefore her prescriptions are not "objective medical evidence" sufficient to support a finding of medical impairment.[2] Likewise, Plaintiff's statement that she suffered from swelling, R. at 393, is a "statement of symptoms" and cannot support a finding of medical impairment, 20 C.F.R. § 404.1521. Further, the evidence of left foot issues that does qualify as "objective medical evidence" is contradicted by other evidence on the record. The scans finding a potential left foot fracture and osteonecrosis were inconclusive, stating respectively that "small avulsion fracture fragments are not excluded," R. at 377, and that osteonecrosis was "possible," R. at 393. In contrast, other imaging done in 2013 and 2017 found no evidence of a fracture or healed fracture in Plaintiff's left foot, R. at 394, 1908, and a 2013 MRI was "without evidence for associated fracture" and revealed "no convincing evidence for osteonecrosis," R. at 432, Pl.'s Br. at 4.

Regarding Plaintiff's knee issues, the only record evidence Plaintiff points to that stems from an acceptable medical source is the review by Dr. Lorensen done on April 26, 2017. R. at

---

[1] While the cane was determined to be medically necessary by Dr. Lorensen during his examination in April 2017, R. at 328, and the ALJ accordingly took notice of the cane in determining Plaintiff RFC, R. at 17, Dr. Lorensen's examination does not refer to a left foot fracture as necessitating the cane, and indeed speaks in depth of Plaintiff's foot growth and resultant pain, R. at328. Thus, Dr. Lorensen's reference to the cane here is not necessarily evidence of a left foot fracture as an impairment.

[2] Sections 404.1502 and 416.902, as currently constituted, list a "Licensed Physician Assistant" as an acceptable medical source. See 20 C.F.R. §§ 404.1502(a)(8), 416.902(a)(8). However, these sections state that a Physician Assistant is an acceptable source "only with respect to claims filed (see § 416.325) on or after March 27, 2017." Id. Plaintiff filed her claim prior to this cutoff date on February 3, 2017. R. at 57.

328. In this review, Dr. Lorensen diagnosed Plaintiff with "bilateral knee pain and dislocation." R. at 331. However, a diagnosis is not sufficient to establish an impairment. See 20 C.F.R. § 404.1521 ("We will not use . . . a diagnosis, or a medical opinion to establish the existence of an impairment(s)."). Additionally, this assessment was contradicted by the only objective medical evidence accompanying Dr. Lorensen's report, a radiology examination from Samaritan Medical Center, which found Plaintiff's left knee to be in a state that was "essentially age-appropriate." R. at 332. Other objective evidence, such as the scans done in 2013, also established that Plaintiff's knees appeared "normal." R. at 481.

Thus, the evidence presented in the record was contradictory. It is within the province of the ALJ to resolve conflicts in the medical evidence so long as the ALJ explains how the evidence conflicts and how they resolve the conflict. See Gough v. Saul, 799 F. App'x 12 (2d Cir. 2020) ("[i]t is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts . . . [however] the ALJ did not explain how the evidence conflicted, nor did the ALJ explain how he purported to resolve that conflict."). Here, the ALJ identified an evidentiary conflict regarding Plaintiff's knee and foot impairments by stating that objective medical evidence supporting a finding of impairment was not "sufficient." R. at 13. The ALJ then referred to record evidence that conflicted with a finding of impairment, including the radiology examination attached to Dr. Lorensen's report and the examinations of Plaintiff's feet. R at 13.

Thus, the ALJ's determination that Plaintiff's foot and knee issues are not medical impairments is supported by substantial evidence. See Micheli v. Astrue, 501 F. App'x 26, 29 (2d Cir. 2012) (upholding ALJ's decision resolving conflict in evidence and finding claimant not disabled).

Additionally, even if the ALJ's determination was made in error, Plaintiff has not asserted or shown that this error caused any prejudice, and no such prejudice is apparent. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). For example, Plaintiff does not assert, and it does not appear, that if the ALJ found Plaintiff's foot and knee issues to be impairments at step 2, these issues would equal the severity of one of the listed impairments in 20 C.F.R. Part 404, and thus support a finding of disability at step 3. Further, there would not be prejudice at step 4 or step 5 because the ALJ accounted for the symptoms stemming from Plaintiff's legs and feet—pain and cane use—when determining her RFC. R. at 17; see Flower v. Comm'r of Soc. Sec., No. 16-cv-1084, 2018 WL 895579, at *5 (N.D.N.Y. Feb. 13, 2018) (finding that the ALJ's conclusion that specific issues were not impairments was "at most harmless error" because the ALJ considered the symptoms arising from those issues at later steps.). Thus, even if the ALJ did err, such error was harmless.

### B. The ALJ Erred in His Assessment of Nurse Rizzo's Opinion

In asserting that the ALJ erred in his evaluation of Nurse Rizzo's opinion, Plaintiff argues (1) the ALJ made a false summation of the record, (2) the ALJ substituted his own expertise or view of the medical proof for Nurse Rizzo's, and otherwise did not sufficiently explain his analysis, and (3) the ALJ erred in finding that there was "no evidence" in the record supporting Nurse Rizzo's assessment that Plaintiff would need to consistently miss work.

#### 1. The ALJ did not Present a False Summation of the Record

Plaintiff argues that the ALJ included a false summation of the record in his analysis of Nurse Rizzo's opinion by stating that Plaintiff "has shown and reported improvement" when she "has complied with her physical therapy." Pl.'s Br. at 13. Plaintiff states that, on the contrary,

"Plaintiff only reported 'minimal' gains from physical therapy due to her continued intense pain." Id.

The Court cannot agree that this statement by the ALJ constitutes a "false summation." Substantial evidence on the record supports the ALJ's statement. The same physical therapy record Plaintiff references also states that Plaintiff was "demonstrating improvements in strength and is ambulating with a more normalized gait pattern." R. at 1584. Records cited by the ALJ earlier in his opinion likewise note progress, i.e. "[p]atient reported that her foot continues to be sore but she is pleased with her motion and function. HEP is going well," R. at 1580, "[Patient] is ambulating better and able to wear sneakers today," R. at 1586. There are several other entries in the record that support the ALJ's statement that Plaintiff "has shown and reported improvement" with physical therapy including those found at pages 1573, 1590, and 1634 of the record. Thus, the summation of the record referenced by Plaintiff was not false or made in error.

> 2. *While the ALJ May Not Have Substituted His Own Expertise or View of The Medical Proof for Nurse Rizzo's, the ALJ Did Not Sufficiently Explain His Reasoning*

An ALJ is "not permitted to substitute his own expertise or view of the medical proof . . . for any competent medical opinion." Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015); see also Flynn v. Comm'r of SSA, 729 F. App'x 119, 121 (2d Cir. 2018)

Plaintiff again takes issue with the ALJ's assertion that Plaintiff "has shown and reported improvement" when she "has complied with her physical therapy" and the ALJ's conclusion that this contradicts Nurse Rizzo's opinion regarding plaintiff's necessary absenteeism from work. Pl.'s Br. at 13. Plaintiff argues that this conclusion "implies that Plaintiff's limitations would be less substantial had she continued physical therapy" and thus the ALJ substituted his view of the medical proof for that of Nurse Rizzo's medical opinion. Id.

15

Plaintiff's characterization of the ALJ's statement is not necessarily accurate. The ALJ does not explicitly make any assumptions regarding the possible effect of additional, past physical therapy, merely stating that Plaintiff's improvement with physical therapy contradicts Nurse Rizzo's assessment of Plaintiff's necessary absenteeism. R. at 18. There are interpretations of this statement that do not constitute improper substitution of the ALJ's expertise for a medical opinion.

However, when dealing with a medical opinion such as Nurse Rizzo's, an ALJ is required to "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2). Here, the ALJ does not explain how Plaintiff's past improvement with physical therapy contradicts Nurse Rizzo's assertion that Plaintiff must be absent from work such that a reviewing court can follow his reasoning. Thus, the Court is unable to determine if the ALJ's grant of partial weight to Nurse Rizzo's opinion is supported by substantial evidence. The ALJ's choice to partially disregard Nurse Rizzo's assessment of Plaintiff's necessary absenteeism may have an effect on the outcome of the case in that it necessarily affected the ALJ's determination of Plaintiff's RFC and thus the determination of whether Plaintiff was disabled.

Thus, this case must be remanded so the ALJ may appropriately explain his rationale in finding that Plaintiff's success in physical therapy contradicted Nurse Rizzo's opinion. Torres v. Barnhart, No. CV-01-6051, 2005 WL 147412, at *7 (E.D.N.Y. Jan. 24, 2005) ("Remand is particularly appropriate where additional findings or explanation will elucidate the rationale for the ALJ's decision.") (citing Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)).

> 3. *The ALJ Erred in Finding There Was "No Evidence" Supporting Nurse Rizzo's Assessment that Plaintiff Would Need to Miss Substantial Amounts of Work*

The substantial evidence standard requires a reviewing court to ensure an agency's factual determinations are supported by "sufficient evidence" contained in the record. Biestek, 139 S. Ct. at 1154.

In granting only partial weight to Nurse Rizzo's opinion, the ALJ found that the record contained "no evidence indicating that the claimant's pain from her physical impairments would require her to miss that much work on a monthly basis, or be off-task to that extent on a daily basis." R. at 18. In support of this finding, the ALJ made the factual determination based on the record that "the claimant's physical examinations generally not[e] only slight issues of pain in her right shoulder and left foot." Id.

Plaintiff argues that the ALJ erred and misread the record in making this finding because the section of the record cited by the ALJ, page 1902, does not indicate that the pain in Plaintiff's left foot was "slight" but rather at a level seven with "sensitive callouses." Pl.'s Br. at 14–15. Defendant agrees that "only the right shoulder pain is referred to as 'slight' in the record medical evidence" and that "the ALJ mistakenly referred to Plaintiff's foot pain as 'slight,'" but still claims that the ALJ's decision is supported by substantial evidence.

The Court agrees with Plaintiff. The ALJ made a factual determination that Plaintiff's physical examinations "generally" note only "slight issues of pain" in her left foot. R. at 18. However, the sections of the record the ALJ cites to support this factual assertion, far from stating only "slight" issues of pain, set forth the following regarding Plaintiff's left foot: "significant tenderness," R. at 262, "the goal of the surgery is to achieve relief of the [left foot] pain," R. at 1188, "moderate tenderness" and "increased pain with forced toes dorsiflexion," R. at 1352, "moderate to severe tenderness with palpation," R. at 1412, reporting "no acute distress"

17

but "tenderness" in the foot, R. at 1684, "her left foot . . . [is] very tender . . . she is very minimally able to bear weight," and "she does have significant pain," R. at 1691, "L foot with thick and very sensitive callouses to bottom of forefoot," R. at 1902.

Thus, the record does not contain sufficient evidence to support the ALJ's assertion that Plaintiff's physical exams "generally" note only slight issues of pain in her left foot. Indeed, every section of the report cited by the ALJ in support of this statement contradicts that assertion.

Further, the ALJ relied heavily on this erroneous assessment of the medical evidence to assert that there was "no evidence" to suggest Plaintiff's pain would require her to miss as much work as Nurse Rizzo suggested, and the ALJ used this apparent complete lack of evidence to justify lending only partial weight to Nurse Rizzo's opinion. See R. at 18. Thus, the ALJ's decision to grant only partial weight to Nurse Rizzo's opinion is not supported by substantial evidence. Cf. Burgess v. Astrue, 537 F.3d 117, 130–31 (2d Cir. 2008) (ALJ decision to give reduced weight to medical opinion was not supported by substantial evidence where ALJ stated there was "no objective evidence" to support the opinion, but some medical evidence in the record did support the medical opinion).

This is not a situation where the ALJ merely resolved conflicting evidence as Defendant asserts. Def.'s Br. at 16. The ALJ did not allow for any conflict in the evidence, but rather erroneously stated that there is "no evidence" to support Nurse Rizzo's opinion regarding Plaintiff's absenteeism because Plaintiff's exams "generally" indicate a very low level of pain. R. at 18.

Because the ALJ's assessment of Nurse Rizzo's opinion is based on an erroneous interpretation of the record evidence, and is thus not supported by substantial evidence, the Court remands this case for further proceedings to assess the proper weight to give Nurse Rizzo's

opinion while accurately accounting for the record evidence of pain in Plaintiff's foot. See Burgess, 537 F.3d at 130–131. Also, on remand, the ALJ must explain how Plaintiff's past improvement with physical therapy contradicts Nurse Rizzo's assertion that Plaintiff must be absent from work such that a reviewing court can follow his reasoning, as described in Section IV(B)(2) of this opinion.

### C. Plaintiff's Remaining Arguments

Because the Court orders remand, it need not address Plaintiff's other arguments. Cf. Biro v. Comm'r of Soc. Sec., 335 F. Supp. 3d 464, 472 (W.D.N.Y. 2018) ("However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach this issue."). Since on remand the ALJ is ordered to reconsider his evaluation of, and the weight given to, Nurse Rizzo's opinion, any change in the weight given to her opinion may render moot Plaintiff's arguments concerning the ALJ's treatment of Plaintiff's testimony, the ALJ's RFC determination, and the ALJ's determination based on that RFC that Plaintiff could perform jobs in the national economy.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's determination of no disability is **VACATED**, and the matter is **REMANDED** for further proceedings consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:	September 13, 2021
	Albany, New York

_____
Lawrence E. Kahn
Senior U.S. District Judge